# WERK *v.* BIG BUNKER HILL MINING CORPORATION.

No. 13922.   NOVEMBER 18, 1941.

*Charles F. Hornberger, Neely, Marshall & Greene,* and *Wheeler & Kenyon,* for plaintiff.

*E. C. Brannon* and *J. F. Pruitt,* for defendant.

GRICE, Justice. ■ Error is assigned on the refusal of the court to strike so much of the cross-action of the defendant as

related to damages, and the prayer therefor, based on the averments therein that the suit was not brought in good faith, that petitioner, being a non-resident, should be required to give bond to pay defendant all of its damages and expenses in defending plaintiff's unfounded claim; that petitioner had injured and damaged defendant by closing down its business with the restraining order, thus forcing defendant to employ counsel, summon witnesses, and incur other necessary expense and damage in the sum of five thousand dollars. The rule in this State is that a defendant may not in his answer by way of cross-action set up claim for damages against the complainant for suing out the injunction. *Hussey* v. *Neal,* 49 *Ga.* 160. See *West* v. *Haas,* 191 *Ga.* 569 (7). (13 S. E. 2d, 376). That part of the cross-action relating to damages should have been stricken. As to rule in relation to recovery of damages caused by an erroneous grant of injunction, see the authorities cited in the note to Tenth Ward Road District *v.* Texas & Pacific Ry. Co., 12 Fed. 2d, 245, as reported in 45 A. L. R. 1513, 1518; *Ellis* v. *Millen Hotel Co.,* 192 *Ga.* 66, 70 (14 S. E. 2d, 565).

■ The basis of the second special ground of the motion was, that in the defendant's answer and cross-action it was alleged that the plaintiff had injured and damaged the defendant by closing down its business with the restraining order, by forcing defendant to employ counsel, summon witnesses, and incur other necessary expense and damage in the sum of $5000; that no evidence was introduced on the trial to support this allegation; that the sole issue developed on the trial was as to the location of the true dividing line between the properties of the plaintiff and the defendant; but that the court charged the jury as follows: "The defendant, as heretofore stated, contends that this suit is not brought in good faith, and that the plaintiff should be required to give bond, and that the plaintiff has injured and damaged defendant by closing down said business with the restraining order heretofore granted in this case, and by forcing defendant to employ counsel and summon witnesses and other necessary expenses in the sum of $5000; and I charge you, on the question of any counterclaim that the defendant has against the plaintiff, the same [burden] rests upon the defendant to make good its contention by a preponderance of the evidence, which has heretofore

been explained to you." As ruled in the first division of this opinion, the defendant had no right in the present proceeding to urge any such contention, and in addition thereto there was no evidence before the jury on which they could have found a verdict for damages. The judge erred in charging the jury as to this contention. *Davis* v. *State,* 190 *Ga.* 100 (4) (8 S. E. 2d, 394), and cit. While the jury's verdict was in other respects favorable to the defendant, they found no damages. From this fact counsel for the defendant insists that even if it were error so to charge, that error was harmless. It has a number of times been in effect held by this court that the verdict of the jury may of itself show that the error in charging what should not have been charged was harmless and will not require the grant of a new trial. *Barnhart* v. *Sternberger,* 68 *Ga.* 341; *Central Railroad* v. *DeBray,* 71 *Ga.* 406; *Augusta Factory* v. *Barnes,* 72 *Ga.* 217 (53 Am. R. 838) ; *Edwards* v. *Block,* 73 *Ga.* 450; *Enright* v. *Atlanta,* 78 *Ga.* 288; *McBride* v. *Georgia Railway & Electric Co.,* 125 *Ga.* 515 (54 S. E. 674) ; *Tyus* v. *Duke,* 178 *Ga.* 800 (174 S. E. 527) ; *Mayes* v. *Simons,* 189 *Ga.* 845 (8 S. E. 2d, 73, 130 A. L. R. 245). These are not exhaustive of the cases where it has been held in effect that the verdict may of itself show that the error in charging what should not have been charged was harmless and will not require the grant of a new trial; but it is believed that they are fairly illustrative of the position of this court on that subject. In none of this class of cases which have been examined, and in which it was held that the charge complained of, though erroneous, was harmless, or was not reversible error, did it appear that there were other inaccuracies in the charge, however slight, except in the *Enright* case, supra, and it is fairly apparent from what was said in the opinion therein that a new trial would have been granted to the plaintiff who was suing for damages from personal injuries, except that under the view of the court he could by the use or ordinary care have avoided the consequences to himself. The instant case is materially different from any of the cases above referred to. In none of them, and in no other where similar rulings were made, was the jury, as here, instructed to return a special verdict, that is, to answer certain written questions. They were to make three findings, instead of one. One of the three questions was to be determined by the instructions complained of.

The jury, under the instructions given them, could have found, as they did, in favor of the plaintiff as to one of the questions, and yet, by finding against him on the other two, as they did, return a verdict which was a substantial victory for the defendant. The charge submitted to the jury three issues, when there should have been only two.

The erroneous charge complained of was not an isolated portion thereof. It was not a slip of the tongue. It was on a subject referred to three times in the instructions given to the jury. It related solely to one of three separate questions the jury were called on to answer. Under the evidence the jury could have found either way as to the first question, the true dividing line. The judge, however, instructed the jury, in effect, that if they found against the plaintiff as to that question, they could also find against him on the question of damages. If there were no other error in the charge, it may be that this court would be driven by the force and effect of some of the decisions next above cited to hold that since the jury found no damages, the error in submitting that question to them was harmless. The writer, without attempting to commit any other member of this court, desires for himself to say that in such a case as this the error in so charging the jury was sufficient to require the grant of a new trial. Any one who has ever practiced law knows that frequently verdicts are the result of compromise; and it is no reflection on the jury and no disparagement on the jury system to say so. A unanimous verdict is required. It represents the unified view of the whole jury. It is a composite picture of the truth of the issue or issues submitted, founded on their opinion of the evidence produced, and the law as given them in charge by the court. It is in many cases a blending of the views of the twelve men. In order to reach a verdict, it is their duty to seek to reconcile their differences of opinion, and it would be expecting too much of frail human nature, even if the high standard of the law did in theory discountenance it, not to find, in frequent instances, compromise verdicts. *"Summum jus* is rarely administered." *Harrison* v. *Powell,* 24 *Ga.* 530, 532. Here, under the erroneous charge of the court, was an opportunity to compromise. Who with certainty can say that they did not? For reasons hereinafter stated, however, this court is not called on to decide whether the error here

dealt with should be treated as harmless, or whether considered alone it requires the grant of a new trial.

Another ground of the motion complains that in charging on the law of prescription, the court instructed the jury: "but possession of land as I have charged you, even without a deed, for a period of twenty years gives a good title to the prescriber." The extract here complained of was a continuation of the following portion of a sentence which immediately preceded it: "I charge you that actual adverse possession of land by itself for twenty years shall give good title by prescription, except as against the State, minors, insane persons, and tenants in common; but, as I have charged you, it must not arise in fraud," and up to that point this was all that the jury had been charged as to the law of prescription either based on color of title or otherwise. Later in the charge the jury were instructed as follows: "In order for title to ripen by prescription the possession must be in the right of the possessor and not of another, must not have originated in fraud, and must be continuous, exclusive, public, uninterrupted, and peaceable, and accompanied by a claim of right. Permissive possession can not be the foundation of a prescription, until an adverse claim and actual notice to the other party."

It is insisted on the one hand that in that portion of the charge complained of the jury were instructed in effect that any character of possession for twenty years would give title by prescription. On the other, it is contended that taking the charge as a whole the jury could not have been misled, but that the portion criticized was obliged to be understood as meaning that the possession must have been adverse, particularly in view of the use of the expression "as I have charged you." While the extract referred to might have been misleading, and it would have been better had the judge made plain what he obviously meant, it is not probable that it was misunderstood; and this ground standing alone presents no sufficient reason for the grant of a new trial.

The requests to charge which related to estoppel, and which were refused, and what the judge did charge on that subject, are set forth in the statement of facts. Were they sufficiently covered by the charge as a whole; and if so, should they nevertheless have been given? There are almost innumerable decisions of this court in which it has been said that a new trial will not be granted on

the ground that a special request to charge was refused, even though legal and pertinent, if covered by the general charge. The cases are collected in the annotation following section 70-207 in the Code of 1933, together with those listed in the Cumulative Supplement. There is another long line of decisions of this court to the effect that such a request should be given in the language requested, and its refusal is ground for a new trial, although the judge may in general terms have covered the principle of law involved in the request. Many of these authorities may be found listed under section 70-207 of the Annotated Code of 1933, and others under section 81-1101 of the same Code. It must be admitted that it is difficult to reconcile all that is said in all these cases.

The precise question raised by the ground of the motion now being considered is this: Was it reversible error to refuse a timely and written request which was pertinent and legal and adapted to a distinct matter in issue, and which was specific, although the judge gave in charge in more general and abstract terms the principle covered by the request? If there are conflicts in the decisions of this court, if by a full bench, the older decision governs. *Calhoun* v. *Cawley,* 104 *Ga.* 335 (30 S. E. 773); *Sheppard* v. *Bridges,* 137 *Ga.* 615, 626 (74 S. E. 245); *Josey* v. *State,* 148 *Ga.* 468 (96 S. E. 1041); *Tucker* v. *Wimpey,* 155 *Ga.* 118 (116 S. E. 315).

The sentence contained in the Code, § 70-207, that "A new trial may be granted in all cases where the presiding judge may . . . refuse to give a pertinent legal charge in the language requested, when the charge so requested shall be submitted in writing," which is first found in the Code of 1863 as § 3639, and repeated in each subsequent Code, is but an adaptation of the language contained in the act approved February 20, 1854 (Acts 1853-4, p. 46), which has been referred to as the new-trial act. Anterior to the passage of that act, the superior courts were empowered to grant new trials, but the only statutory authority on the subject was that they were to be granted in such manner and under such rules and regulations as they might establish, and according to law and the usages and customs of courts. Cobb's Digest, 503. The act of 1854, supra, in section 1, declared that "it shall be obligatory upon the superior courts of this State to

grant new trials in all cases, where," etc., and then named five grounds, one of which was, as above indicated, where the judge refused "to give a legal charge in the language requested, when the charge so requested is submitted in writing." Not being content to declare that it shall be obligatory upon the superior courts of this State to grant new trials in all cases where the presiding judge refused "to give a legal charge in the language requested, when the charge so requested is submitted in writing," the lawmakers in the second section of the act went further, as follows: "It shall be obligatory upon the Supreme Court of this State to reverse the judgment below and award a new trial in every case where it shall appear that an error has been committed in any of the points enumerated in the first section of this act by the judge presiding at the trial of the cause." The third, which is the last section of the act, mentions still another ground; but as to this the act says that the judges of the superior courts may have the power to exercise a sound discretion, and that the Supreme Court shall have power to revise and control such discretionary power in the superior courts. Here, let it be noted, the legislature was dealing with several matters which they said might be grounds of a motion for new trial. As to one of them, they said, this is a discretionary ground, the discretion to be exercised in the first instance by the trial judge, and secondly by this court upon a review of its exercise; but as to the others, it in express terms made it obligatory on the trial judge to grant new trials, and likewise obligatory on this court to reverse the judgment below and award a new trial in every case where it shall appear that there has been a refusal to give a pertinent legal written request.

How has this act been construed and applied? We will not discuss the cases decided before the act of 1854, supra, such as *Long* v. *State,* 12 *Ga.* 293, or *Williamson* v. *Nabers,* 14 *Ga.* 286. The first time this new-trial act came before this court was at the January term, 1855, the next year following its enactment. *Terry* v. *State,* 17 *Ga.* 204. It was not a decision by a full bench, one of the Judges being disqualified. The point at issue was whether a charge, pertinent and legal, and also specific, should have been given; and if so, whether the refusal to give it was reversible error, when the judge had charged generally on the subject. The court reversed the judgment. While it is not a three-

judge case, it is significant as being the very first utterance of the court on the subject. It was a murder case. The charge requested was a specific application of the law to one of the contentions brought out in the evidence. The judge refused it on two grounds: first, because it assumed a state of facts which did not exist; and secondly, because he had charged the jury already as to the law generally regulating the various grades of homicide. This court in that case said: "It is scarcely necessary, we apprehend, to discuss the sufficiency of the last reason assigned by the circuit judge for refusing to give the charge requested. For notwithstanding he may, at the beginning of his charge, have instructed the jury generally upon murder, manslaughter, and justifiable homicide, still it was the right of the prisoner to ask a specific charge upon the point to which the attention of the court was called, provided there was any proof in the record to warrant it." In that case this court ruled that "Under the new-trial act of 1853-4 the defendant is not called upon to show, affirmatively, that injury has resulted from the refusal of the court to give a legal charge as requested; the statute assumes that damage is done, and will listen to no allegation to the contrary. It makes the refusal to give a legal charge, when requested, and the granting of a new trial, convertible terms."

In *Lamb* v. *Girtman,* 26 *Ga.* 625, 630, the decision was equally emphatic and clear, to wit: "The request was in writing. And the new-trial act of 1854 requires a legal request, if in writing, to be given in its very words, and declares that if it is refused a new trial must be granted by the court refusing it, or by this court on appeal to this court." Next in point of time came the Code of 1863. Article 1 of part 3, title 8, chapter 1, deals with new trials and for what cause allowed. After, in section 3636, recognizing the right of the superior court to grant new trials according to the usages and customs of courts, it then proceeds to codify the grounds enumerated in the act of 1854, supra, and in a subsequent section, § 3642, distinctly recognizes that there may be other sufficient grounds, not provided for in this Code; and in each instance where the ground of a motion for new trial is dealt with, including the one refusing a request to charge, the codifiers used the expression "may be granted," and the same word in the same connection is used in Code of 1933, § 70-207, in dealing with the same subject-

matter. They also did not use the word "obligatory" as it appears in the two sections of the act of 1854, supra. This does not weaken, however, the imperative character of the duty laid upon the trial judge and upon this court in dealing with the effect of a refusal to give a requested charge, for the reason that "In the construction of statutes, *may* is held to mean *shall* in two cases, viz.: where the thing to be done 'is for the sake of justice, or for the public benefit.'" *Weems* v. *Farrell*, 33 *Ga.* 413, 419; *Jennings* v. *Suggs*, 180 *Ga.* 141, 142 (178 S. E. 282); *Longino* v. *Hanley*, 184 *Ga.* 328 (191 S. E. 101), and cit. In *Jordan* v. *West*, 58 *Ga.* 606, the report of the entire case embracing only five lines, there appears no statement of facts. The case is believed never to have been cited in any subsequent decision. An examination of the record on file in the clerk's office discloses that there were two requests to charge. One was given in substance, and in almost its exact language. A careful examination of the second and of the brief of evidence shows that not only was that part of it which was legal and pertinent embraced within the instructions as given, but that it contained an element which was not adjusted to the evidence.

In *Western & Atlantic R.* v. *Clements*, 60 *Ga.* 319, the statement was made that that portion of the written requests which was legal was substantially given. The decision in *Murphy* v. *Peabody*, 63 *Ga.* 522, in which only two Judges participated, where the pronouncement was made that "A request to charge may be disregarded where the charge as given embraces the same matter or as much of it as is appropriate," carries the implication that part of the request was not pertinent. The statement in the sixteenth headnote in *Augusta & Summerville R. Co.* v. *Dorsey*, 68 *Ga.* 228 (16), must be read in connection with the corresponding division of the opinion, by which it appears that the court was of the opinion that the requests merely contained principles, and that to have complied with the requests would have been merely to repeat that which had been "substantially charged." This observation applies also to the ruling in *Carter* v. *Dixon*, 69 *Ga.* 82 (5), 88. In *Ocean Steamship Co.* v. *McAlpin*, 69 *Ga.* 437, 440, it was recognized that to give a charge substantially as requested meets the requirements of the Code. Said this court: "When the request to charge is in writing, is legal and pertinent, the

court should give it 'in the language requested' (Code, § 3715); or at least should, as has been often held by this court, give it substantially as requested." A similar statement may be found in *Slade* v. *Paschal*, 67 *Ga.* 541, 545. The cases of *Jordan* v. *West, W. & A. R.* v. *Clements, Murphy* v. *Peabody, A. & S. R. Co.* v. *Dorsey*, and *Carter* v. *Dixon*, supra, and the *Holdridge* and *Papot* cases, hereinafter referred to, have been singled out, because, so far as our research has gone, those are the only decisions that would be invoked to sustain a contention that the holding in *Thompson* v. *Thompson*, 77 *Ga.* 692 (3 S. E. 261), hereinafter to be noticed, and decisions following the principle there laid down, should yield to the older cases. We have endeavored to show by an examination of these earlier cases that none of them is authority for the proposition that a new trial need not result because of the refusal of the judge to give substantially in the language used a timely written request, which is specific in its application, legal and pertinent, although in principle and in more general abstract terms it may be covered by other instructions given by the court. In our opinion, the contrary is true, to wit: a new trial ordinarily will result when the judge refuses to give, substantially in the language used, a timely written requested charge which is specific in its application, legal and pertinent, although in principle and more general and abstract terms it may be covered by other instructions given by the court. The words "pertinent" and "legal" mean that the requested charge must be correctly adapted to one or more of the issues growing out of the evidence, must not be argumentative, nor contain any intimation or expression of opinion as to what has or has not been proved as to any question of fact, and that it must be in no other respect objectionable.

In none of the decisions preceding them was the principle underlying the *Slade* and *Thompson* cases, supra, expressly denied; and if in seeking to apply the rule that when the requested charge was substantially given, this was a sufficient compliance with the statute, there was a misapplication of the rule. Such misapplication of the rule in a given case will not be a binding authority unless the facts of the two cases are identical. *Southern Railway Co.* v. *Brown*, 126 *Ga.* 1, 5 (54 S. E. 911); *Macon News Printing Co.* v. *Hampton*, 192 *Ga.* 623 (15 S. E. 2d, 793, 796). In

*Holdridge* v. *Cubbedge,* 71 *Ga.* 254, the headnote contains this language: "All that the court is required to do is to submit fairly and fully the law as applicable to any theory of the case growing out of the testimony. When this is done, he may refuse any request coming from any source, and the parties must be satisfied." This is pure obiter, however; for, as stated in the opinion, "The motion for new trial contains five requests to charge the jury by defendant, and the court says that he refused these requests because they had previously been given in his charge to the jury. The charge of the court has not been brought up by the plaintiff in error; so that we are to infer that the court is right; that these requests had been given in his charge." In *Mitchell* v. *State,* 71 *Ga.* 128, a requested charge was refused because, as stated by the judge, it was substantially given in his general charge. The judgment was reversed for the reason, among others, that the general charge did not specifically refer to the points made in the request. The decision, however, was by two Justices, one being disqualified. In *Papot* v. *Southwestern Railroad,* 74 *Ga.* 296, it was said: "Although a request to charge may have been good law and applicable to the case, yet where it is substantially covered by the whole tenor of the general charge, its refusal will not require a new trial." Here again is the ruling that if in the general charge the request is substantially covered, the refusal of the request will not require a new trial. Neither *Ocean Steamship Co.* v. *McAlpin* nor *Slade* v. *Paschal,* supra, it must be admitted, was an adjudication on the point now under discussion, though in each is a distinct recognition of the rule now being laid down.

The decision in *Thompson* v. *Thompson,* supra, is, however, a direct ruling, and, as far as our investigation has gone, the first one on the precise question. We shall quote what a unanimous court, speaking through Chief Justice Bleckley, said on that subject: "Another request, made in writing, to charge the jury, which the court declined to give, was to the effect that if the administrator could have collected this third note by the exercise of ordinary diligence, he would be liable for the amount of that note. The reason for declining this request was that the judge thought the general charge covered it. It is not controverted that the request of itself was a proper one; but as the principle was embraced in the general charge, it is thought that that is a sufficient

reason for not giving the request. We think not, and rule to this effect: Where several distinct matters involving diligence are presented to the jury, while it is proper to charge a general principle applicable to them all, yet if a specific charge, which is legal, apt, and precisely adjusted to one of them, be requested, it is proper to give the latter also, if it would materially aid the jury in applying the general principle to this one of the several matters for their consideration. Now, law is not only to be submitted to the jury, but it is to be applied by them; and where its application is materially aided by a specific request, there seems as much reason to give that request as to give the principle; and looking to the evidence in this case, we have no doubt that the request was a proper one. It was bringing the general principle down to this specific instance; and the jury would have been helped materially by having the very words of this request delivered to them as a part of the charge of the court."

The same line of reasoning was followed, and a similar result reached, in *Metropolitan Street Railroad Co.* v. *Johnson,* 90 *Ga.* 500 (16 S. E. 49), a suit for personal injuries. The defendant's counsel requested the following charge: "The precise thing which every person is bound to do before stepping upon a railroad-track is that which every prudent man would do under like circumstances. If prudent men would look and listen, so must every one else, or take the consequences so far as the consequences might have been avoided by that means." It was refused. The judgment was reversed. This court held: "Though in principle and in more general and abstract terms this charge may have been covered by other instructions given by the court, we are nevertheless of the opinion that it should have been given as requested, and that the refusal of the request was error. To this effect see *Thompson* v. *Thompson,* 77 *Ga.* 692 (supra), where the refusal of the request was held to be ground for a new trial." The ruling was stated in a headnote, viz.: "A specific charge which is legal and adjusted to a distinct matter in issue, involving the right of the plaintiff to recover, and which may materially aid the jury, should be given as requested, although in principle and in more general and abstract terms it may be covered by other instructions given by the court." In a number of subsequent cases this court has held that although the trial judge may, by a general proposi-

tion of law in his charge, have covered the request, it was nevertheless error requiring a new trial to deny a request which applied the principle to the specific defense relied on, or to a distinct matter in issue. Among other cases are the following: *East Tenn., Va. & Ga. Ry. Co.* v. *Smith,* 91 *Ga.* 176 (17 S. E. 104); *Belt* v. *State,* 103 *Ga.* 12 (29 S. E. 451); *Snowden* v. *Waterman,* 105 *Ga.* 384 (31 S. E. 110); *Taylor* v. *State,* 105 *Ga.* 846 (33 S. E. 190); *Roberts* v. *State,* 114 *Ga.* 450 (40 S. E. 297); *Central of Ga. Ry. Co.* v. *Goodman,* 119 *Ga.* 234 (45 S. E. 969); *Rowe* v. *Cole,* 176 *Ga.* 592 (168 S. E. 882); *Cooper* v. *State,* 180 *Ga.* 612 (180 S. E. 103).

As already indicated, there may be found rulings by this court which can not harmonize with, and which contain statements which are contrary to, what we conceive to be the true law which is involved in the consideration of that ground of the motion relating to the refusal of the court to charge as requested on estoppel. We now follow, however, the older and therefore binding authorities on the subject. There are sound reasons underlying the application of the rule which this court in the instant case reaffirms. As was said in *VanDyke* v. *Martin,* 55 *Ga.* 466, 470, "Trial, under our system, is a co-operation of minds—a grave and serious consultation over what should be done and how the end should be accomplished. The attorneys in the cause are not mere carriers to bring in materials for constructing the edifice; they have a right, as representing the parties, to suggest where every important stone should be laid, and to assign reasons, drawn from legitimate sources, in support of their suggestions." It is only in exceptional instances that the lawyer who is conducting his side of the trial does not know more about that particular case than does the judge. He should, and generally does. It is to be expected that he has thoroughly prepared it, knows the facts, and has devoted his industry to the study of the particular principles of law involved, and their relation and application to the pleadings and the proofs. To the judge, able and experienced though he be, the cause submitted is only one of many on the docket awaiting disposition, as to which he knows nothing of the issues save as they develop on the trial; and keeping always in view, as he should, the provisions of the Code § 81-1104, which has sometimes been referred to as the dumb act, he may find it more convenient, and

he usually does, to instruct the jury only by giving them in charge the general, abstract principles which are involved. That the principle of law embodied in the request may have been covered by the general charge may not always be, even from a practical standpoint, a sufficient answer for a refusal of the request. There may be behind the request special and fair motives whose bases are not apparent to the judge or on the record. The cold type-written transcript is neither a phonograph nor a photograph, nor can it present the atmosphere of a trial. Those and similar reasons were no doubt in the minds of the lawmakers when the law was enacted. There may be, too, other considerations why the requested charge, pertinent and legal, should be given; but the compelling and all sufficient reason is, "Thus sayeth the law."

■ It is recited in one ground of the motion that it was contended and argued on the trial that the Sitton line as maintained by the defendant was an old established line of more than fifty years standing, and that to disturb that line would not only cause the defendant to lose a part of its land, but it would upset adjacent and corresponding lines and corners in that entire section of Lumpkin County, and would result in untold confusion on the part of other landowners as to where their land lines and corners might be located, and would have the effect of causing endless lawsuits and loss of lands by the citizens generally of that section of Lumpkin County. Evidence was introduced that the so-called Sitton line tied in with other lines and corners, and that for the jury to upset and disregard the Sitton line would also upset many other lines and corners in that section. The following charge was requested and refused: "I charge you, gentlemen, that you are not concerned with the effect or result of whatever verdict you may render in this case. Your entire responsibility is to find a true verdict under the evidence introduced in the case and the law given you in charge by the court; and as to the effect or result of such verdict, that is a matter with which you are not at all concerned." In our opinion, this charge should have been given as requested. The recitals of fact contained in this ground of the motion, approved as true by the judge, show that it was pertinent. It is legally sound. It contained the substance of the oath required of each juror. Code, § 59-706.

■ A new trial is granted with less reluctance in the instant

case, because the motion was passed on, not by the judge who presided at the trial, but by his successor. *Shannon* v. *State*, 57 *Ga.* 482; *Thompson* v. *State*, 60 *Ga.* 619, 620; *Neal* v. *Field*, 68 *Ga.* 534; *Cleveland* v. *Treadwell*, 68 *Ga.* 835; *Florida Central &c. R. Co.* v. *Grant*, 110 *Ga.* 328 (35 S. E. 271); *McGee* v. *Young*, 132 *Ga.* 606 (64 S. E. 689).

*Judgment reversed. All the Justices concur. Reid, C. J., and Duckworth, J., concur in the result. Bell and Jenkins, JJ., concur specially.*

Bell, Justice. Let me say first that I concur in the judgment of reversal because of the refusal of the requests to charge, but do not concur in all the reasoning on this subject in the fourth division of the foregoing opinion. Further comment as to this is deferred for the moment.

■ I agree that it was error to overrule the demurrer to the cross-action, but do so with the reservation that such an error would ordinarily be harmless, where, as in this case, the jury on submission of the cross-action found against the complainant therein. But since the judgment must be reversed for other reasons, I consider the ruling proper. See *Hudgins Contracting Co.* v. *Redmond*, 178 *Ga.* 317 (4) (173 S. E. 135); *Ellis* v. *First National Bank of Atlanta*, 182 *Ga.* 641 (4) (186 S. E. 813); *Harris* v. *Neuman*, 183 *Ga.* 398 (3) (188 S. E. 689).

■ For similar reason, I would consider as harmless the error in the charge relative to the cross-action, although, as I understand, there is being made in this case no express ruling contrary to this view. See *McBride* v. *Georgia Railway & Electric Co.*, 125 *Ga.* 515 (54 S. E. 674); *Byrd* v. *Grace*, 43 *Ga. App.* 255 (5) (158 S. E. 467). It can only be assumed that the jury was possessed of intelligence and uprightness, and would understand and apply the instructions given to them.

■ I concur unqualifiedly in the ruling in the third division.

■ Now, with reference to the question discussed in the fourth division: I can not agree that the previous decisions of this court are in conflict on the question as to refusal of requests to charge, as indicated in that division. It therefore seems to me that we have in this case no occasion for applying the rule that if there are conflicts in the decisions, the older, if unanimous, will govern. The opinion not only states the rule, but, after reviewing numerous

decisions, declares: "We now follow, however, the older and therefore binding authorities on the subject." This latter statement is in my opinion unnecessary, and can only serve to create confusion, where none exists. So, although I am agreeing that in this case it was error to refuse the requests, I am not doing so upon any theory that we are following "the older" decisions to the *exclusion* of later ones that are supposed to be in conflict.

It is declared in the Code, § 102-102 (6): "A substantial compliance with any requirement of the Code, or laws amendatory thereof, especially on the part of public officers, shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by the enactment." This statement was embodied in the Code of 1863 as section 5; and while that Code was not adopted until after passage of the act of 1854, the principle so stated, I take it, was in existence previously and had been from time immemorial. Compare *Brown* v. *Brown,* 184 *Ga.* 827, 830 (193 S. E. 754); *Guffin* v. *Kelly,* 191 *Ga.* 880 (4), 891 (14 S. E. 2d, 50). Likewise, in the field of contracts, a substantial compliance is all that may be required of either of the parties. Code, § 20-1101; *Henderson Warehouse Co.* v. *Brand,* 105 *Ga.* 217 (2) (31 S. E. 551); *Bandy* v. *Frierson,* 138 *Ga.* 515 (6) (75 S. E. 626). As I understand the decisions, they have followed this principle in dealing with the act of 1854; that is to say, the refusal to give a pertinent legal charge in the language requested has generally been held erroneous, unless there was "a substantial compliance;" but in case of such compliance, it has been "deemed and held sufficient."

It is true there may be obiter here and there, and also ambiguous or unhappy expressions; but when the obiter is disregarded and the other pronouncements are construed in the light of their particular facts, the decisions are in principle harmonious. It is further true that there may have been occasional *misapplications* of the recognized rule of law, in specific cases; but, as pointed out in the foregoing opinion, instances of this type should not be considered as precedents, except in later cases involving identical facts; and I am not aware of any such situation, as applicable to the present inquiry.

In dealing with the point under consideration, we may lay aside as irrelevant all of those decisions in which it has been held that

requests to charge were properly refused because they were not presented in time, or were inherently objectionable for some reason. Taking it as a premise, then, that a correct and pertinent legal charge was duly requested in writing, we have in the main two lines of cases, but not a confusion of cases as suggested. First, cases in which it was held that the requested instruction should have been given and that its refusal was error requiring a new trial, the general charge containing no instruction in the same or substantially the same language. Second, cases in which it was ruled that the request was substantially covered in the general charge; and this being so, that its refusal was not erroneous. *For cases of the former class* see *Terry* v. *State,* 17 *Ga.* 204; *Lamb* v. *Girtman,* 26 *Ga.* 625; *Slade* v. *Paschal,* 67 *Ga.* 541, 544 (2); *Ocean Steamship Co.* v. *McAlpin,* 69 *Ga.* 437 (4); *Mitchell* v. *State,* 71 *Ga.* 128 (7); *Thompson* v. *Thompson,* 77 *Ga.* 692 (2) (supra); *Metropolitan Street Railroad Co.* v. *Johnson,* 90 *Ga.* 500 (5) (supra); *East Tennessee, Virginia & Georgia Railway Co.* v. *Smith,* 91 *Ga.* 176 (supra); *Snowden* v. *Waterman,* 105 *Ga.* 384 (5) (supra); *Roberts* v. *State,* 114 *Ga.* 450 (supra); *Crawford* v. *State,* 117 *Ga.* 247 (4) (43 S. E. 762); *Central of Georgia Railway Co.* v. *Goodman,* 119 *Ga.* 234 (2) (supra); *Brooks* v. *State,* 128 *Ga.* 261 (57 S. E. 483, 12 L. R. A. (N. S.) 889); *Wooten* v. *Morris,* 175 *Ga.* 290 (4), 293 (165 S. E. 626); *Rowe* v. *Cole,* 176 *Ga.* 592 (168 S. E. 882); *McCrea* v. *Georgia Power Co.,* 179 *Ga.* 1 (5), 14 (174 S. E. 798); *Cooper* v. *State,* 180 *Ga.* 612 (2) (180 S. E. 103). *For examples of the latter class* see *Western & Atlantic Railroad Co.* v. *Clements,* 60 *Ga.* 319 (3); *Murphy* v. *Peabody,* 63 *Ga.* 522 (4); *Augusta & Summerville Railroad Co.* v. *Dorsey,* 68 *Ga.* 228 (16); *Carter* v. *Dixon,* 69 *Ga.* 82 (5); *Papot* v. *Southwestern Railroad,* 74 *Ga.* 296 (9); *Battle* v. *State,* 105 *Ga.* 703 (32 S. E. 160); *Southern Cotton-Oil Co.* v. *Skipper,* 125 *Ga.* 368 (3) (54 S. E. 110); *Southern Railway Co.* v. *Reynolds,* 126 *Ga.* 657 (3) (55 S. E. 1039); *Slaughter* v. *Heath,* 127 *Ga.* 747 (2) (57 S. E. 69, 27 L. R. A. (N. S.) 1); *Millen & Southwestern Railroad Co.* v. *Allen,* 130 *Ga.* 656 (4) (61 S. E. 541); *Armstrong* v. *State,* 181 *Ga.* 538 (5) (183 S. E. 67); *Douberly* v. *State,* 184 *Ga.* 577, 580 (6) (192 S. E. 226); *Johnson* v. *Sherrer,* 185 *Ga.* 341 (195 S. E. 149); *Griffin* v. *Barrett,* 185 *Ga.* 443 (4), 446 (195 S. E. 746); *McCoy* v. *State,* 191 *Ga.* 516 (3) (13 S. E. 2d, 183).

*Of the first class* let us take for instance *Thompson* v. *Thompson,* 77 *Ga.* 692 (supra), where it was said: "Where several distinct matters involving diligence are presented to the jury, while it is proper to charge a general principle applicable to them all, yet if a specific charge, which is legal, apt, and precisely adjusted to one of them, be requested, it is proper to give the latter also, if it would materially aid the jury in applying the general principle to this one of the several matters for their consideration. . . Now, the law is not only to be submitted to the jury, but it is to be applied by them; and where its application is materially aided by a specific request, there seems as much reason to give that request as to give the principle; and looking to the evidence in this case, we have no doubt that the request was a proper one. It was bringing the general principle down to this specific instance; and the jury would have been helped materially by having the very words of this request delivered to them as a part of the charge of the court."

Another leading example of the first class is *Metropolitan Street Railroad Co.* v. *Johnson,* supra, in which it was ruled: "A specific charge which is legal and adjusted to a distinct matter in issue, involving the right of the plaintiff to recover, and which may materially aid the jury, should be given as requested, although in principle and in more general and abstract terms it may be covered by other instructions given by the court." Of the second class, see, for illustration, *Augusta & Summerville Railroad Co.* v. *Dorsey,* 68 *Ga.* 228 (16), supra, in which it was said: "A close and critical examination of the charge as set out in full in the record, satisfies us that the judge understood thoroughly the law of the case, and gave it in a clear, concise, and satisfactory manner to the jury. So that when this is done, we can not see how a failure to repeat what may be good law, but has been substantially charged, should be any good ground of error." Another example of the same type is *Slaughter* v. *Heath,* supra, in which it was held: "If on the trial of an issue formed by a caveat to the propounding of a will the judge fully and fairly charges the law on the subject of testamentary capacity, it is not necessary that he should, on request to charge, repeat and reiterate in different forms or modes of expression what has already been sufficiently given."

Numerous other examples on each side might be quoted; but

these four decisions are typical, and will illustrate what may be concluded from them all, namely, that the two lines of decision are not in conflict, but hold consistently that where a request is refused and the general charge does not contain an instruction substantially in the language requested, a new trial should be granted; otherwise not. In other words, the gist of all the decisions, though expressed in various terms, seems to be that "The court is not bound to charge in the exact language of a request; and a new trial will not be granted because of a refusal to charge as requested, when the charge given substantially covers the request." *Southern Railway Co.* v. *Reynolds,* supra.

The statute on the subject provides in effect that a new trial should be granted where the judge refuses "to give a pertinent legal charge in the language requested." It says nothing about applying the law to a specific issue, and the decisions as to such application to a distinct or specific issue are based only upon the requirement that a requested charge should be given "in the language requested," or substantially so. Stated differently, if the request is specific, so must the charge be specific; if the request itself merely embodies an abstract principle, so may the charge be abstract. Such, I think, is the meaning of the decision in *Thompson* v. *Thompson, 77 Ga. 692* (2), supra, where, as indicated in the opinion, it was the wording of the request itself that brought "the general principle down" to the "specific instance," and the same is true of the decision in *Metropolitan Street Railroad Co.* v. *Johnson,* supra, and others of like import.

The act of 1854 should be construed in connection with other well-established principles which were in existence at the time, among them: a new trial will not be granted for insubstantial error, nor for any error where it *affirmatively* appears from the record that the error was harmless; and the law at all times looks to substance rather than form.

While the statute was addressed both to the trial courts and to the Supreme Court, it can only be assumed that it was intended to be in furtherance of justice, and did not have for its purpose the injustice, or, as I might say the foolishness, of granting new trials for insubstantial or harmless error. Not only does this appear to be its proper construction, but, in the opinion of the writer, it has been consistently so construed in the various de-

cisions concerning it, even so in the early cases of *Terry* v. *State,* 17 *Ga.* 204 (2), and *Lamb* v. *Girtman,* 26 *Ga.* 625, supra, when they are studied in the light of the facts on which they were predicated.

What must have been intended by the phrase "in the language requested"? In the law, we are simply trying to get at the substance of things regardless of form. Language is only the *means* of expressing thought or feeling, and is thus a mere form or vehicle. This statute therefore must have been concerned with the thought or principle to be expressed, and not with the mere *mode* of expression. So it was evidently not its purpose to require a charge even in words of similar form or structure, where in the general charge the principle invoked is just as plainly and understandably expressed, and as concretely related, as in the request presented; the mere matter of *words* not being controlling. Thus it is my view that all of the decisions on the question here presented may be reconciled in principle, and that, too, without straining. See, in this connection, 14 R. C. L. 751, § 22.

In view of what has been stated, was it error to refuse the request on the subject of estoppel? I think so. It sought application of the principle of estoppel to a specific issue "in this case," as between "the defendant corporation" and "the plaintiff or his agents," and thus the request itself brought "the general principle down to this specific instance." The general charge on estoppel, however, was in general or abstract terms, and did not relate the principle to the specific issue involved. The charge also failed to submit, in concrete terms or otherwise, the theory that the defendant may have acted "upon its own judgment and information as to the land line of its property." Accordingly, the general charge was not even substantially "in the language requested," and the refusal to give the requested instruction constituted error requiring a new trial. The case thus falls within the first class to which reference has been made, but a reversal of the judgment is still entirely consistent with the decisions of the second class.

■ I agree also that it was erroneous to refuse the request to charge quoted in the fifth division of the foregoing opinion. It seems that this request was made for the purpose of correcting some erroneous impression that might have been made upon the jury by improper argument of opposing counsel. While counsel

for the defendant might have avoided such impression by objecting at the time, the improper argument was not waived by failure to act immediately. In such case there may be a waiver by silence or inaction throughout the trial; but there are several things that may be done during the trial, one of which is to request instruction. For instance, in *Brooks* v. *State,* 183 *Ga.* 466 (188 S. E. 711, 108 A. L. R. 752), it was said: "When an improper argument is made, the adversary must act, if redress is desired; if not, the incident is closed. The adversary may (1) waive by silence; (2) he may request a rebuke by the court; (3) he may request instructions to the jury either at that moment or as a part of the general instructions; or (4) he may move for a mistrial. Possibly other motions may be made or rulings invoked."

■ I agree fully to what is stated in the sixth division.

For reasons given in divisions 4 and 5 of the instant opinion, I concur in the judgment of reversal. I am authorized to say that Mr. Justice Jenkins concurs in this opinion.